[629 NYS2d 194]

In the Matter of 300 WEST 49TH STREET ASSOCIATES, Respondent, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, OFFICE OF RENT ADMINISTRATION, Appellant.

First Department, June 20, 1995

APPEARANCES OF COUNSEL

*Iris J. Korman* of counsel, Bronx *(April A. Gray-Huertas* on the brief; *Dennis J. Saffran,* attorney), for appellant.

*William J. Eberight* of counsel, New York City *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

On or about February 3, 1987, tenants James Shepard and Frank Post filed a rent overcharge complaint with respondent New York State Division of Housing and Community Renewal (DHCR) against petitioner 300 West 49th Street Associates (Landlord). The tenants took occupancy of their rent-stabilized apartment (the Apartment) located at 300 West 49th Street in Manhattan pursuant to a one-year lease commencing on February 1, 1986 at a monthly rental rate of $950.

The Landlord answered that no overcharges had occurred because the Apartment had been substantially altered to the effect of creating a new apartment. The Landlord maintains that due to the extent of the alterations, it was entitled to and did charge a "first rent" or "free market rent."

By order issued March 14, 1990, the District Rent Administrator determined: that the Landlord was not entitled to charge a free market rent; that the lawful stabilized rent for the lease period commencing February 1, 1989 was $804.71; and that the total overcharges, including excess security together with treble damages assessed through March 31, 1990, were $48,211.12.

The Landlord subsequently filed a petition for administrative review seeking modification of the foregoing order. In its petition, the Landlord asserted, *inter alia,* that: the work done in the Apartment was substantial enough to entitle it to a free market rent; or, in the alternative, that the vacancy improvements rejected by the Rent Administrator as routine maintenance, such as the painting and plastering of walls, the

scraping and sanding of floors and demolition costs, were actually integral parts of the renovations and should have been included in the determination of the lawful stabilized rent (see, Rent Stabilization Code [9 NYCRR] § 2522.4); and that treble damages should not have been assessed as there was no evidence of bad faith.

By order and opinion issued June 4, 1992 (the Order and Opinion), the Acting Deputy Commissioner agreed with the Rent Administrator that the Landlord was not entitled to a first stabilization rent, holding that: "[I]n order for an owner to qualify for a 'first rent,' the apartment alterations must be so substantial as to create a new unit. DHCR policy and numerous precedents state that in order to qualify for a first stabilization rent the owner must change the outer dimensions of the apartment. Although the owner does document substantial alterations, the outer dimensions of the subject apartment were not changed."

The Deputy Commissioner also found that the Rent Administrator correctly determined that various scraping, sanding, painting and plastering did not rise to the level of vacancy improvements and were routine maintenance required to be performed in all apartments regulated by the Rent Stabilization Code. The Deputy Commissioner, however, did find that the demolition costs should have been included as a vacancy improvement and that treble damages should not have been assessed against the Landlord as the extent of the work done was sufficient to warrant a conclusion that the Landlord harbored a good-faith belief that he was entitled to a "first rent". The Deputy Commissioner found that the rent overcharges, plus excess security and interest, were in the total sum of $14,968.80. The petitioner thereafter commenced the underlying CPLR article 78 proceeding to annul the Order and Opinion of the Deputy Commissioner.

In a decision dated March 22, 1993, the IAS Court annulled the Order and Opinion and held that the DHCR's " 'policy' " that the outer dimensions of an apartment must be changed in order to qualify for a " 'first rent' " for a substantially altered apartment was arbitrary and capricious and an abuse of discretion. The IAS Court annulled and vacated the Deputy Commissioner's Order and Opinion, and permitted the petitioner to charge a "first rent" for the subject Apartment. The DHCR appeals and we now reverse.

On appeal, the Landlord argues that the exterior perimeter

rule should not have been applied by DHCR in this case because of the magnitude of the interior renovations which had been performed. The Landlord further maintains that due to the configuration of the Apartment, the actual square footage had been increased.

Rent Stabilization Code § 2522.4, which provides for "Adjustment of legal regulated rent", states, in relevant part:

"(a) Increased space and services, new equipment, new furniture or furnishings; major capital improvements; other adjustments.

"(1) An owner is entitled to a rent increase where there has been a substantial increase * * * of dwelling space or an increase in the services, or installation of new equipment or improvements * * * provided in or to the tenant's housing accommodation * * *

"(4) The increase in the monthly stabilization rent for the affected housing accommodations when authorized pursuant to paragraph (1) of [subdivision (a)] shall be 1/40th of the total cost, including installation".

The foregoing statute is clearly applicable to the instant case and provides for an adjustment of the legal rent whenever the landlord makes renovations or improvements, or increases the dwelling space or services to the rent-stabilized housing accommodation. However, the statute further provides that the owner is entitled only to a monthly rental increase of 1/40th of the total costs including installation. The statute contains no provision by which a landlord may charge a "first rent" for renovations or improvements and, indeed, no such provision exists.

The mechanism pursuant to which a landlord may charge a "first" or "free market" rent is an administratively created policy implemented by DHCR in its capacity as the administrative agency which regulates residential rents. The policy applies only when the perimeter walls of the apartment have been substantially moved and changed and where the previous apartment, essentially, ceases to exist, thereby rendering its rental history meaningless. If the rental history of a stabilized apartment is no longer applicable due to the creation of a new unit with completely different perimeter walls, there would be no rational method which DHCR could utilize to calculate the legal rent since the stabilized rent is based upon a continuous chain of rental history. By way of example, such allowance might be granted if a two-bedroom apartment were split into

two studio apartments or two smaller dwellings were consolidated to form one large apartment. In either circumstance, the rental history of the prior units would be inapplicable to the newly created apartment for the purposes of determining the stabilized rent as the former unit or units no longer remain.

In the instant case, there is no dispute that the Landlord was already granted the vacancy allowances and rent increases for the improvements made pursuant to Rent Stabilization Code § 2522.4. Further, these statutorily defined renovations include situations where there is an increase of dwelling space in the housing accommodation. The statutory provisions, and administrative policy, clearly do not provide for a first stabilization rent under the circumstances of this case and to adopt petitioner's position would permit petitioner to frustrate the purpose of the Rent Stabilization Law.

Rent regulations were enacted in New York State by the Legislature in response to an emergency housing shortage after World War II which was caused, to a large extent, by the return of large numbers of war veterans. The Emergency Housing Rent Control Law (L 1946, ch 274) was passed into law in 1946 to provide property owners with a fair return for their investment and at the same time to provide affordable housing accommodations for the general population. All housing units completed prior to February 1, 1947 were subject to the Rent Control Law.

The Rent Stabilization Law was enacted in 1969 as a result of the continuing housing emergency and the need to regulate dwelling units constructed after 1947. The law was designed: to encourage future housing construction by allowing owners reasonable rent increases; to prevent the exaction of "unjust, unreasonable and oppressive rents"; and to "forestall profiteering, speculation and other disruptive practices" in the housing market (Administrative Code of City of NY § 26-501).

Petitioner's position herein leads to the irrational conclusion that every time an apartment undergoes a substantial remodeling, a "first rent" may be imposed, even though the same apartment and its concomitant rent history are essentially intact. This would permit a landlord to illegally charge "market rent" for a regulation dwelling unit under the guise of substantial renovation in contravention of the intent and purpose of the Rent Stabilization Law and would lead to the type of profiteering and disruptive practices the rent regulations sought to prevent.

The IAS Court, in granting the petition, relied on *Kurcsics v Merchants Mut. Ins. Co.* (49 NY2d 451, 459) and similar cases for the proposition that where there is a question of pure statutory reading and analysis, which is dependent only upon an accurate apprehension of legislative intent, there is little basis to rely upon the expertise of the particular administrative agency and its interpretive regulations. The IAS Court also cited *Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal* (187 AD2d 320), noting in that case that this Court rejected the DHCR's position that the term " 'substantially rehabilitated' " required the " 'gutting' " of an entire vacant building in order to qualify for an exemption under the Emergency Tenant Protection Act.

The IAS Court's analysis, however, is flawed. This matter is not one of statutory reading and analysis as the statute does not provide for the imposition of a "first rent". Rather, this case concerns an administrative policy implemented by the agency on a matter on which the statute is silent. In such cases, the courts will defer to the governmental agency charged with the responsibility of administering the statute as long as its interpretation is not irrational or unreasonable *(Matter of Salvati v Eimicke,* 72 NY2d 784, 791, *rearg denied* 73 NY2d 995; *Matter of Colt Indus. v New York City Dept. of Fin.,* 66 NY2d 466, 471, *rearg denied* 67 NY2d 757; *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.,* 94 AD2d 299, 232, *affd* 61 NY2d 976).

In the instant case, Rent Stabilization Code § 2522.4 specifically provides for an adjustment of rent when specific types of work are performed by the Landlord. However, in those cases where the prior rent history of the apartment can no longer be utilized because that prior apartment no longer exists, the DHCR has adopted a rational policy under which a "first rent" may then be charged. It must be noted that the DHCR's policy of allowing a first market rent has been implemented by both the Conciliation and Appeals Board and the DHCR on numerous occasions, over many years, and has recently been cited with approval by this Court *(Matter of Myers v D'Agosta,* 202 AD2d 223; *see also, Matter of Asen Bros. & Brook v Leventhal,* 54 NY2d 839; *Eberhart v Eimicke,* NYLJ, June 29, 1988, at 22, col 5 [Sup Ct, NY County, Silbermann, J.], *affd* 151 AD2d 1052; *Matter of Windsor Plaza Co. v New York State Div. of Hous. & Community Renewal,* 144 AD2d 1046, *lv denied* 74 NY2d 605 [confirming *Matter of Windsor Plaza Co.,*

Off of Rent Admin PAR docket No. ARL 04966-L]). The IAS Court, therefore, was without power to rewrite the DHCR policy and permit a first rent for a stabilized apartment where both the Rent Stabilization Code and DHCR policy prohibit such an increase.

In conclusion, the DHCR has rationally and coherently formulated and implemented an administrative policy to deal with those situations on which the Rent Stabilization Code was silent and that such policy applies to the instant case.

Accordingly, the judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered on August 17, 1993, which granted the petition and vacated and annulled the June 4, 1992 order of the Deputy Commissioner for Rent Administration is reversed, on the law and the facts, without costs, and the petition is dismissed.

ELLERIN, J. P., and WILLIAMS, J., concur with TOM, J.; KUPFERMAN, J., dissents and would affirm for the reasons stated by GREENFIELD, J.

Judgment, Supreme Court, New York County, entered August 17, 1993, which granted the petition, reversed, on the law and the facts, without costs, and the petition dismissed.